UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/2016
```

WELBY, BRADY & GREENBLATT, LLP,

               Plaintiff,

   -against-

THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES and SYLVIA
MATTHEWS BURWELL, Secretary,

               Defendants.

No. 15-cv-195 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

     This action arises out of Plaintiff Welby, Brady & Greenblatt, LLP's Freedom of

Information Act ("FOIA") request to Defendant the Department of Health and Human Services

("HHS") for certain documents within HHS's possession relating to a money judgment entered

against the Equal Opportunity Commission of Nassau County, Inc. ("EOC Nassau"), an entity

that receives federal funds. Before this Court is the summary judgment motion of HHS and the

Secretary of Health and Human Services (collectively, "Defendants" or the "Government") and

Plaintiff's cross-motion for summary judgment. For the reasons that follow, Defendants' motion

is GRANTED and Plaintiff's cross-motion is DENIED.

## BACKGROUND

### I.   The Class Action Litigation and HHS Intervention

     Plaintiff represents certain creditors (the "Judgment Creditors") in a class action litigation

against EOC Nassau and other defendants for violations of the Employee Retirement Income

Security Act ("ERISA Violations").[1] (Declaration of Gregory J. Spaun in Opposition to Motion

---

[1] The class action litigation is captioned *L.I Head Start Child Development Services, Inc., Debrah Garcia, derivatively on behalf of Community Action Insurance Agencies Group and as class representative of all other*

and In Support of Cross Motion ("Spaun Decl."), ECF No. 20, ¶ 1); (Declaration of Nathaniel A. Cohen ("Cohen Decl."), ECF No. 15, ¶ 7.)  On April 25, 2012, the Judgment Creditors obtained a judgment against EOC Nassau in the Class Action Litigation (the "Judgment").  (Spaun Decl., ¶ 4, Ex. D.); (Declaration of Michael Marquis ("Marquis Decl."), ECF No. 17, ¶ 16.)  On May 21, 2012, the defendants in the Class Action Litigation, including EOC Nassau, filed a notice of appeal to the United States Court of Appeals for the Second Circuit.  (Marquis Decl., ¶ 16.) Thereafter, on June 5, 2012, the Judgment Creditors sought to enforce the Judgment and restraining notices were placed on EOC Nassau's bank accounts at City National Bank.  (*Id*.)

Between June 11, 2012 and June 19, 2012, attorneys from HHS's Office of General Counsel ("OGC"), officials from the Administration for Children and Families ("ACF"), HHS's counsel from the United States Department of Justice ("DOJ"), counsel for EOC Nassau, and counsel for the New York State Department of State ("DOS") exchanged emails regarding the possibility of HHS's intervention in the Class Action Litigation to prevent the use of funds from federal grants to satisfy the Judgment.[2]  (Marquis Decl., ¶ 18.)  On June 19, 2012, HHS moved to intervene in the Class Action Litigation.  (Spaun Decl., ¶ 6, Ex. E.)  On June 25, 2012, the district court vacated the restraining notices and stayed enforcement of the Judgment pending resolution of the appeal.  (Spaun Decl., ¶ 6.)  The Second Circuit affirmed the Judgment on March 13, 2013.  (*Id*., Ex. F.)  Between March 14, 2013 and August 29, 2013, OGC attorneys, ACF officials, DOJ counsel, counsel for EOC Nassau, and DOS counsel again communicated via

---

*persons similarly situated v. Economic Opportunity Commission of Nassau County, Inc., Economic Opportunity Council of Suffolk, Inc., Yonkers Community Action Program, Inc., John L. Kearse and Stella B. Kearse, as Representative of the Estate of John L. Kearse, Deceased* in the United States District Court for the Eastern District of New York, docket number 00-cv-7394 (the "Class Action Litigation").

[2] EOC Nassau is the recipient of federal funds through two HHS programs.  (Cohen Decl., ¶ 6.)

email regarding preventing the satisfaction of the Judgment with federal grant funds.  (Marquis Decl., ¶ 20.)

## II.      The FOIA Request

To ascertain which assets of EOC Nassau originated from federal grants and which assets originated from state, local or private funds, counsel for Plaintiff, via a letter from partner Alexander A. Miuccio dated March 21, 2014, requested that EOC Nassau, pursuant to FOIA, make available documents concerning the Judgment and certain meetings between HHS and EOC Nassau regarding the Judgment (the "FOIA Request").  (Spaun Decl., ¶ 8.)  In particular, the FOIA Request seeks the following:

- Documents from August 10, 1981 to date that contain information related to federal grants awarded to EOC Nassau in the form of financial assistance used for the purchase and/or of capital improvement of a commercial building located at 134 Jackson Street, Hempstead, New York ("Premises").  The Premises was purchased by EOC Nassau on August 10, 1981.  ("FOIA Request 1")

- Documents that contain any information that relate to the conveyance of the above-described Premises on January 4, 1993 from EOC Nassau to CEDC Incorporated, including the terms of the contract of the conveyance, and its ancillary papers. ("FOIA Request 2")

- Documents from April 26, 2012 to date that contains [sic] information that relate to the money judgment entered on April 26, 2012 by plaintiffs, L.I. Head Start Child Development Services, Inc. and Paul Adams, derivatively on behalf of Community Action Agencies Group in a class action against defendants EOC Nassau, Economic Opportunity Council of Suffolk, Inc., Yonkers Community Action Program, Inc. and Stella B. Kearse, as representative of the Estate of John L. Kearse, Deceased in the U.S. District Court for the Eastern District of New York under Case Number 00-CV-7394 (ADS) ("Judgment").  Such documents include, but are not limited to the enforcement of the Judgment against EOC Nassau. ("FOIA Request 3")

- Documents that contain information that relate to Risk Management meetings held at the Region II Office, 26 Federal Plaza, New York, New York between EOC Nassau representatives and Ivan Rodriquez, Head Start Program Manager and/or his representatives during the year 2013 to date including, but not limited to, responses by EOC Nassau to a series of requests by the Department of Health and

Human Services, Region II Office with regard to the enforcement of above-described Judgment and the funding to satisfy the Judgment.  ("FOIA Request 4")

(*Id*. ¶ 9, Ex. G.)

## III.    Responses to the FOIA Request

On or about September 2, 2014, ACF made an interim release responsive to Plaintiff's FOIA request, which consisted of thirteen documents produced in their entirety from the ACF Office of Head Start.  (Declaration of Kimberly N. Epstein ("Epstein Decl."), ECF No. 16, ¶ 13, Ex. 3.)  Subsequently, ACF referred the FOIA Request to the HHS Office of the Secretary's ("OS") Freedom of Information Officer to conduct a search for and process HHS OGC records responsive to the FOIA Request.  (Marquis Decl., ¶ 7.)

On January 12, 2015, Plaintiff initiated the instant action, contending that HHS was unlawfully withholding documents responsive to the FOIA Request.  (Complaint, ECF No. 1, ¶ 14.)  Thereafter, on January 16, 2015, ACF made a second interim release of documents responsive to the FOIA Request, which consisted of four documents.  (Epstein Decl., ¶13.)  ACF withheld portions of the documents in the second interim release under Exemption 4 to the FOIA, 5 U.S.C. § 552(b)(4), which permits withholding of trade secrets and privileged and confidential commercial or financial information. (*Id*., Ex. 4.)  On March 3, 2015, ACF made a third interim release of documents responsive to the FOIA Request—six documents released in full and fifteen documents released with redactions.  (*Id*., Ex. 5.)  The fifteen documents not released in full were redacted pursuant to Exemptions 4 and 5 of the FOIA.  Exemption 5, 5 U.S.C. § 552(b)(5), permits withholding of inter-agency or intra-agency communications that would normally be privileged in the civil discovery context.  (*Id*.)

On April 1, 2015, counsel for the Government, on behalf of HHS OS, released an additional 141 pages of documents to Plaintiff.  (Declaration of Elizabeth Tulis ("Tulis Decl."),

4

ECF No. 18, ¶ 3.)  Of those 141 pages, 54 pages were released in full and 87 pages were redacted.  (*Id*.)  On May 4, 2015, another 27 pages were produced—13 pages in full and 14 pages redacted.  (*Id*. ¶ 4.)  On May 18, 2015, counsel for the Government, on behalf of HHS OS, produced revised versions of the releases initially made on April 1, 2015 and May 4, 2015.  (*Id*. 5.)  Additionally, counsel for the Government produced to Plaintiff a draft *Vaughn* index[3] documenting and describing HHS's withholdings.  (*Id*.)

Plaintiff responded to HHS's draft *Vaughn* index by letter dated June 8, 2015, objecting to certain withholdings made on the basis of FOIA Exemption 5.  (*Id*. ¶ 6, Ex. A.)  Plaintiff subsequently confirmed that its objections were limited to certain FOIA Exemption 5 withholdings and that it was not objecting to the adequacy of the Government's search for documents responsive to the FOIA Request.  (*Id*. ¶ 7, Ex. B.)

## LEGAL STANDARD

"Summary judgment is 'the preferred procedural vehicle for resolving FOIA disputes.'" *Estate of Ghais Abduljaami*, 2016 WL 94140, at *3 (quoting *Bloomberg L.P. v. Board of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 270 (S.D.N.Y. 2009)).  "Summary judgment in the FOIA context, as in any other, is appropriate if the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d at 732–33 (quoting Fed. R. Civ. P. 56(c)).

---

[3] A *Vaughn* index "is an 'itemized listing of the non-disclosed records, describing each record and portion withheld, and providing a detailed justification for the agency's withholding, specifying the [applicable] FOIA exemption.'" *Estate of Ghais Abduljaami v. U.S. Dep't of State*, No. 14-cv-7902 (RLE), 2016 WL 94140, at *3 (S.D.N.Y. Jan. 7, 2016) (quoting *Nat'l Day Laborer Org. Network v. United States Immigration and Customs Enforcement Agency*, 811 F. Supp. 2d 713, 733 (S.D.N.Y. 2011) *amended on reconsideration* (Aug. 8, 2011)).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 79 (1973)).[4] "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812 (citing *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam); *Malizia v. United States Dep't of Justice*, 519 F. Supp. 338, 342 (S.D.N.Y. 1981)). "Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney*, 19 F.3d at 812 (internal quotation and citation omitted). However, "[a]n agency's determination that the documents are enumerated under an exemption . . . is afforded no deference." *Estate of Ghais Abduljaami*, 2016 WL 94140, at *2 (citing *Bloomberg L.P.*, 601 F.3d at 147.).

In addition to affidavits or declarations, agencies typically rely upon a *Vaugh* index to establish that documents were properly withheld pursuant to an enumerated FOIA exemption. "A *Vaughn* index allows the opposing party 'to contest the affidavit in an adversarial fashion,' and permits a court to effectively review the agency's redactions." *Estate of Ghais Abduljaami*, 2016 WL 94140, at *3 (quoting *Halpern v. F.B.I.*, 181 F.3d 279, 293 (2d Cir. 1999)). Though disfavored in FOIA lawsuits, discovery may occur if the plaintiff makes "a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavit or declarations, or

---

[4] Here, Plaintiff does not contest the adequacy of the search, so the Court's focus will be limited to propriety of the withheld documents.

provide[s] some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812–13 (citations omitted). Absent such a showing, a district court may properly "'forgo discovery and award summary judgment on the basis of affidavits.'" *Id*. at 812 (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980)).

## DISCUSSION

## I.     Information Withheld Pursuant to FOIA Exemption 5

"Upon request, FOIA mandates disclosure of records held by a federal agency, unless the documents fall within enumerated exceptions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (citing 5 U.S.C. § 552) (internal citation omitted). "These limited exemptions do not obscure the basic policy that disclosure, not secrecy is the dominant objective of the fact." *Id*. at 7–8 (quotations and citations omitted). FOIA Exemption 5—the exemption at issue here—prevents disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). For a document to "qualify" for Exemption 5, "its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath Water Users*, 532 U.S. at 8. "Exemption 5 is based on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Wood v. F.B.I.*, 432 F.3d 78, 83 (2d Cir. 2005) (internal quotations and citations omitted).

Exemption 5 "includes the attorney-client [and] work product privilege[s] . . . ." *New York Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 318 (S.D.N.Y. 2015) (citing *Grand*

*Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999)).  "'The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance.'"  *New York Times*, 101 F. Supp. 3d at 318 (quoting *Brennan Ctr. For Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 202 (2d Cir. 2012)).  The work product privilege, meanwhile, "protects documents where, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'"  *New York Times*, 101 F. Supp. 3d at 318 (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted)).  "The work product privilege enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them at leisure."  *Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 126 (D.C. Cir. 1987) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

Plaintiff advances a series of challenges to the Government's withholdings under FOIA Exemption 5: (1) certain documents were not prepared "in anticipation of litigation" and do not fall within the ambit of FOIA Exemption 5; (2) the attorney-client privilege does not extend to facts communicated to HHS by EOC Nassau relating to its non-governmental assets; (3) EOC Nassau was not operating as a consultant of HHS; and (4) HHS, DOS, and EOC Nassau do not share a common legal interest.  The Court will address the merits of each of these arguments in turn.

### A.  Anticipation of Litigation

Plaintiff contests the withholding of certain documents or portions of documents pursuant to FOIA Exemption 5 on the grounds that they were not prepared in anticipation of litigation.

The Second Circuit has noted that "courts have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'" *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994) (quoting *Hickman*, 329 U.S. at 511). "When assessing whether a document is prepared 'in anticipation of litigation," courts in [the D.C. Circuit] employ a 'because of' test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."'" *Judicial Watch, Inc. v. United States Dep't of Justice*, 118 F. Supp. 3d 266, 273 (D.C. 2015) (quoting *F.T.C. v. Boehringer Ingelheim Pharms., Inc.,* 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting *United States v. Deloitte LLP,* 610 F.3d 129, 137 (D.C. Cir. 2010))).[5]  Documents prepared in anticipation of litigation are distinct from the documents "prepared by lawyers in the ordinary course of business or for other nonlitigation purposes." *Judicial Watch*, 118 F. Supp. 3d at 273.

In the present case, Plaintiff argues that district court's vacatur of the restraining orders on EOC Nassau's bank accounts extinguished any interest of HHS in the Class Action Litigation, and therefore any documents prepared or authored after that date cannot be withheld on the basis of FOIA Exemption 5 because they cannot possibly have been prepared *in anticipation of litigation*.  (Plaintiffs' Memorandum of Law in Support of Cross Motion for Summary Judgment and in Opposition to HHS's Motion for Summary Judgment ("Pl.'s Cross-Mot.") or ECF No. 21

---

[5] "Courts in the Second Circuit frequently cite FOIA decisions from the D.C. Circuit as it is a 'jurisdiction with considerable experience on FOIA matters.'" *Ghais Abduljaami*, 2016 WL 94140, at *5, n. 2 (quoting *Main St. Legal Servs., Inc. v. Nat'l Sec. Council,* 962 F. Supp. 2d 472, 474 (E.D.N.Y. 2013)).

at 10.)  The Government counters that "the Second Circuit's affirmance of the Judgment in March 2013 did not resolve the issue of whether federal funds would be used to satisfy the Judgment"; thus, documents created even after that date could still be considered "in anticipation of litigation."  (Memorandum of Law in Support of the Government's Motion for Summary Judgment ("Gov't Mot.") or ECF No. 14 at 13; Epstein Decl. ¶ 21.)  In response, Plaintiff asserts that since the Judgment Creditors are not seeking to garnish EOC Nassau's federally funded assets, any prospective litigation is necessarily limited to EOC Nassau's non-federally funded assets, in which HHS has no interest.  (Pl.'s Cross-Mot. at 10–11.)

While the Court does not second guess Plaintiff's repeated protestations that it is not seeking to garnish EOC Nassau's federally funded assets, it does not follow that the Government's concern as to the source of the funds used to satisfy the Judgment was completely assuaged following the district court's vacatur of the restraining orders.  There plausibly continues to exist a concern as to the source of the funds to be used to satisfy the Judgment until that time at which the Judgment is satisfied.  Furthermore, the Government's *Vaughn* index provides reasonably specific detail to allow the Court, and Plaintiff, to discern that the subject communications/documents pertained to the Class Action Litigation.  Accordingly, the Court rejects Plaintiff's challenge that certain withheld documents were not prepared in anticipation of litigation.

### B.  Application of Attorney-Client Privilege to Facts

Plaintiff next challenges the application of the attorney-client privilege to documents that contain merely *facts* communicated by EOC Nassau to HHS regarding its non-governmental assets.  (Pl.'s Cross-Mot. at 11.)  In doing so, Plaintiff relies upon the Second Circuit's decision in *Hopkins v. U.S. Department of Housing and Urban Development*, 929 F.2d 81 (2d Cir. 1991).

(*Id.*)  However, as the Government correctly points out, *Hopkins* dealt with the deliberative process privilege, which is entirely distinct from the attorney-client privilege.  In *Federal Housing Finance Agency v. UBS Americas Inc.*, a case from this district also cited by Plaintiff, the court noted that the attorney-client privilege "'extends only to communications and not to facts." No. 11-cv-5201 (DLC), 2013 WL 1700923, at *1 (S.D.N.Y. Apr. 16, 2013) (quoting *Upjohn v. United States*, 449 U.S. 383, 395 (1981)).  In that case, however, the court's primary concern was that "material . . . is not rendered privileged simply because it was contained in a memorandum prepared by an attorney."  *Fed. Hous. Fin. Agency*, 2013 WL 1700923, at *2. Finally, Plaintiff cites *National Immigration Project of National Lawyers Guild v. United States Department of Homeland Security*, 868 F. Supp. 2d 284 (S.D.N.Y. 2012), for the proposition that communications by a federal agency to its counsel relating to factual information provided by a third party—not the federal agency—is not protected from discovery by the attorney-client privilege.  (Pl.'s Cross-Mot. at 12–13.)  In that case, the court held that certain documents did not fall within the ambit of FOIA Exemption 5 because the federal agency was "merely appl[ying] its policies and interpretations of applicable statutes to requests supplied by third parties."  *Nat'l Immigration Project of Nat'l Lawyers Guild*, 868 F. Supp. 2d at 298.  Here, in contrast, the documents are email correspondence to or from HHS and legal counsel regarding the Class Action Litigation.  (Epstein Decl., Ex. 6; Marquis Decl., Ex. 3.)  The Court does not accord *National Immigration Project of National Lawyers Guild* such a broad reading as to stand for the proposition that the attorney-client privilege is always inapplicable when a communication discusses facts conveyed by a third party.

        More fundamentally, Plaintiff's argument is premised upon the assumption that the withheld documents include factual details provided to the Government by EOC Nassau relating

to EOC Nassau's non-governmental assets.  Plaintiff provides absolutely no support for its position that the withheld documents contain such information.  Moreover, the supplemental declarations of Kimberly Epstein and Michael Marquis are unequivocal that the Government did not withhold documents containing factual information concerning EOC Nassau's non-governmental assets.  (Supplemental Declaration of Michael Marquis, ECF No. 23, ¶ 4; Supplemental Declaration of Kimberly N. Epstein, ECF No. 24, ¶ 4.)  Given that the Court accords these declarations a presumption of good faith, and in the absence of any evidence presented by Plaintiff that documents withheld pursuant to the attorney-client privilege contain factual information regarding EOC Nassau's non-governmental assets, the Court rejects this challenge to documents withheld under FOIA Exemption 5.

### C.  Disclosure to Third Parties

Plaintiff's final challenge to the application of the attorney-client privilege is that the Government destroyed any claim of privilege by disclosing the communications to third parties. (Pl.'s Cross-Mot. at 13–16.)[6]  Though Plaintiff is correct that disclosure of a communication to a third party is deemed a waiver of attorney-client privilege, (*see Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003)) the majority of the documents identified by Plaintiff in the instant case either were not disclosed to third parties or the Government did not claim attorney-client privilege over such documents.

---

[6] In particular, Plaintiff cites to the following documents as improperly withheld on the basis of disclosure to third parties: MIUCCIO_ACF_00013-14; MIUCCIO_ACF_00015-16; MIUCCIO_ACF_00028-29; MIUCCIO_ACF_00030-32; MIUCCIO_OS_00001-02; MIUCCIO_OS_0007-13; MIUCCIO_OS_00022-23; MIUCCIO_OS_00031-33; MIUCCIO_OS_00070-73; MIUCCIO_OS_00130-138; MIUCCIO_OS_00152-153; MIUCCIO_OS_00154-55; MIUCCIO_OS_00159-60; MIUCCIO_OS_00162; MIUCCIO_OS_00175-76; MIUCCIO_OS_00180-82; MIUCCIO_OS_00183-84; MIUCCIO_OS_00193-94; MIUCCIO_OS_00195-98; MIUCCIO_OS_00199-203; MIUCCIO_OS_00204-07; MIUCCIO_OS_00226-27; and MIUCCIO_OS_00228.

First, with respect to MIUCCIO_ACF_00013-14; MIUCCIO_ACF_00015-16; MIUCCIO_ACF_00028-29; MIUCCIO_ACF_00030-32, the portions of those documents that were withheld are communications solely between ACF and its counsel.  (*See* Spaun Decl., Ex. H.)  For each of those documents, the specific email that was sent to or from a third party is produced in its entirety.  Additionally, the mere fact that the email chains in those documents contain emails sent to or from third parties does not destroy any claim of attorney-client privilege over later-in-time emails exchanged solely between the Government and its attorneys.  The information withheld in these documents is contained within emails exchanged only between the Government and its attorneys—no third parties are recipients or senders of those emails.  Therefore, Plaintiff cannot claim waiver of attorney-client privilege with respect to these documents.

Second, as to MIUCCIO_OS_00001-02; MIUCCIO_OS_0007-13; MIUCCIO_OS_00022-23; MIUCCIO_OS_00031-33; MIUCCIO_OS_00175-76; MIUCCIO_OS_00193-94; MIUCCIO_OS_00226-27; and MIUCCIO_OS_00228, the Government did not even claim attorney-client privilege as a basis for withholding under FOIA Exemption 5.  (*See* Miuccio Decl., Ex. 3.)

The remaining documents[7] cited by Plaintiff require a greater degree of analysis by the Court.  These documents are email exchanges in which emails sent to or received by third parties are redacted.  Nevertheless, the Government maintains that such documents fall within the ambit of FOIA Exemption 5 under the consultant corollary or common interest doctrine.  (Gov't Mot. at 9–12.)

---

[7] MIUCCIO_OS_00070-73; MIUCCIO_OS_00130-138; MIUCCIO_OS_00152-153; MIUCCIO_OS_00154-55; MIUCCIO_OS_00159-60; MIUCCIO_OS_00162; MIUCCIO_OS_00180-82; MIUCCIO_OS_00183-84; MIUCCIO_OS_00195-98; MIUCCIO_OS_00199-203; and MIUCCIO_OS_00204-07.

i.     **Consultant Corollary**[8]

While FOIA Exemption 5 prevents disclosure of intra- and inter-agency documents, in certain instances, communications with outside consultants may be considered intra- or inter-agency.  *See Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 77 (2d Cir. 2002).  "Because agencies commonly need recommendations from hired consultants, courts have determined that documents generated outside the agency but created pursuant to the request of the agency qualify as inter-agency memoranda for purposes of Exemption 5."  *S.A. Ludsin & Co. v. U.S. Small Bus. Admin.*, No. 96-cv-5972, 1998 WL 355394, at *3 (E.D.N.Y. Apr. 2, 1998) (citing *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980)).  In *Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1 (2001) ("*Klamath*"), the Supreme Court noted that "consultants whose communications have typically been held exempt have not been communicating with the Government in their own interest or on behalf of any person or group whose interests might be affected by the Government action addressed by the consultant. In that regard, consultants may be enough like the agency's own personnel to justify calling their communications 'intra-agency.'"  532 U.S. at 12.  While the Court declined to analyze the application by Courts of Appeals of the consultant corollary beyond "typical examples," it explicitly noted that it "excludes . . . communications to or from an interested party seeking a Government benefit at the expense of other applicants."  532 U.S. at 12, n.4.  Notably, the Second "Circuit has *not* advised on how far [the consultant] corollary extends . . . ."  *Intellectual*

---

[8] The Government contends in its reply brief that Plaintiff waived any challenge to the applicability of the consultant corollary in failing to address the argument in its cross-motion papers.  (Gov't Reply at 8.)  Though Plaintiff does not discuss the consultant corollary in its cross-motion papers, Plaintiff directly challenges the characterization of EOC Nassau as a Government consultant in Footnote 1 of its reply brief.  (Pl.'s Reply at 10, n. 1.)  Moreover, given the uncertainty in the Second Circuit regarding the application of the consultant corollary, the Court believes it prudent to undertake an analysis of the applicability of the consultant corollary to this case rather than blindly apply it to shield certain documents.

14

*Prop. Watch v. U.S. Trade Representative*, No. 13-cv-8955 (ER), 2015 WL 5698015, at *17 (S.D.N.Y. Sept. 25, 2015).[9]

In the instant case, it does not appear that EOC Nassau operated as a consultant or advisor to the Government.  This case is distinguishable from *Fox News Network, LLC v. United States Department of The Treasury*.  739 F. Supp. 2d 515 (S.D.N.Y. 2010).  In *Fox News*, the court determined that the third party "functioned 'enough like' [the federal agency's] own personnel . . . 'to justify calling their communications "intra-agency."'"  739 F. Supp. 2d at 540 (quoting *Klamath*, 532 U.S. at 12).  Here, it cannot be said that EOC Nassau functioned as an arm of HHS in ensuring that funds from federal grants were not used to satisfy the Judgment. This case is unlike the typical cases highlighted by the Supreme Court in *Klamath*,[10] and, given that the Second Circuit has not defined the exact contours of the consultant corollary, this Court declines to expand the doctrine to a situation wholly distinct from the "typical cases."

### ii.     Common Interest Doctrine

The Government asserts that the common interest doctrine operates to shield from discovery documents shared with third parties.[11]  "The common interest doctrine is a notable

---

[9] The Second Circuit also has declined to decide the issue of whether "documents generated by state or local officials who are participants with federal officials in joint federal criminal or civil investigations, or task forces or other federal-state or local partnerships are not covered by FOIA."  *Grand Cent. P'ship, Inc.*, 166 F.3d at 484.

[10] 532 U.S. at 10 (citing *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1138 (5th 1980) (consultant corollary applied to land appraisal conducted by independent nongovernment appraiser); *Lead Industries Assoc., Inc. v. Occupational Safety and Health Admin.*, 610 F.2d 70, 83 (2d Cir. 1979) (consultant corollary applies to draft reports prepared by outside consultant testifying on behalf of agency); and *Government Land Bank v. GSA*, 671 F.2d 663, 665 (1st Cir. 1982) (parties agreed independent professional's property appraisal qualified as intra-agency document).

[11] In *Hunton & Williams v. United States Department of Justice*, the Fourth Circuit examined the interplay between the consultant corollary and the common interest doctrine.  590 F.3d 272 (4th Cir. 2010).  Analyzing *Klamath*, the Fourth Circuit noted that the Supreme Court determined the consultant corollary to be inapplicable where the outside party's communications with the Government are motivated by the outside party seeking a Government benefit at the expense of others.  590 F.3d at 279.  The Fourth Circuit went on to note that *Klamath*, which "never discussed the common interest doctrine," does "not impact the very different situation . . . where the [Government and outside party" share a unitary interest in achieving a litigative outcome and result."  *Id.*

exception" to the rule that disclosure of a document protected by attorney-client privilege to a third party waives the privilege. *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 66 F. Supp. 3d 406, 410 (S.D.N.Y. 2014). "The doctrine 'precludes a waiver of the underlying privilege concerning confidential communications between the parties "made in the course of an ongoing common enterprise and intended to further the enterprise," irrespective of whether an actual litigation is in progress.'" *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) (quoting *Sokol v. Wyeth, Inc.*, No. 07-cv-8442 (SHS) (KNF) 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989))). "Demonstrating the applicability of the common interest doctrine requires a two-part showing: '(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [must have been] designed to further that interest.'" *HSH Nordbank*, 259 F.R.D. at 71 (quoting *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 171 (S.D.N.Y. 2008)). The party asserting the applicability of the common interest doctrine must make a showing "based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003). A "common legal interest" is *not* a "joint business strategy which happens to include as one of its elements a concern about litigation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 66 F. Supp. 3d at 411 ("[A] common *commercial* interest is insufficient to trigger [the] protections" of the common interest doctrine).[12]

---

[12] Plaintiff asserts that HHS and EOC Nassau's common legal interest must be *identical* for the common interest doctrine to apply.  (Pl.'s Cross-Mot. at 14–15) (citing *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505

The Government asserts that HHS, DOS, and EOC Nassau share a common legal interest. (Gov't Mot. at 15–16.)  In particular, the Government notes that EOC Nassau is the recipient of federal funds through the Community Services Block Grant and Head Start programs.  (Gov't Mot. at 15; Marquis Decl. ¶ 17.)  HHS administers the Head Start grant, and DOS administers the Community Services Block Grant.  (Gov't Mot. at 15–16; Marquis Decl. ¶ 17.)  From this, the Government contends that "HHS, DOS, and EOC Nassau share[] a common legal interest with respect to the class action litigation, namely preventing satisfaction of the Judgment with federal funds."  (Gov't Mot. at 16.)  Plaintiff challenges that HHS does not share a common interest with EOC Nassau in assisting EOC Nassau in protecting its non-governmental assets. (Pl.'s Cross-Mot. at 15) ("It is obvious that there is no legitimate governmental interest in helping EOC Nassau evade the Judgment Creditors' attempts to find EOC Nassau's non-governmental assets—assets that can be attached in enforcement of the Judgment.").

Plaintiff's efforts to refashion the Government's stated legal interest and rewrite the substance of the communications between HHS, DOS, and EOC Nassau are unavailing.  Plaintiff evidently assumes that the portions of the subject emails exchanged between HHS, DOS, and EOC Nassau pertain to EOC Nassau's non-governmental assets.  However, given that Plaintiff's FOIA request was not narrowly tailored to communications and documents pertaining to EOC Nassau's non-governmental assets, it is improper of Plaintiff to assume that the withheld communications necessarily relate to EOC Nassau's non-governmental assets.  The Marquis Declaration establishes that HHS, DOS, and EOC Nassau shared a common legal interest in

---

(E.D.N.Y. 1986)).  At the outset, the Court does not find support for that proposition in *Weil Ceramics*.  More to the point, while some case law has suggested there must be identical legal interests among the parties asserting the common interests, more recent cases have held that the parties need not have total identity of interest as long as a limited common purpose necessitates disclosure to certain parties."  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 434 (S.D.N.Y. 2013) (citations omitted).  As discussed below, the Court finds that there is a sufficient common purpose between HHS, DOS, and EOC Nassau.

ensuring that the Judgment is not satisfied with federal grant money administered by HHS and DOS.  (Marquis Decl., ¶ 17.)  Furthermore, the Government's *Vaugh* index evidences that communications between HHS, DOS, and EOC Nassau concerned a joint litigation strategy with respect to ensuring the Judgment is not satisfied with federal grant funds.  (Marquis Decl., Ex. 3.)  The Court additionally notes that in discussing the Class Action Litigation, specifically, the prevention of the use of federal grant funds to satisfy the Judgment and coordinated litigation strategy, with DOS and EOC Nassau, HHS did not "materially increase[] the likelihood that [the Judgment Creditors] [would] gain access to that information." *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 544 (S.D.N.Y. 2013).  Finally, though EOC Nassau may have an additional, financial interest not shared with the Government, "[a] financial interest of a party, no matter how large, does not preclude a court from finding a legal interest shared with another party where the legal aspects materially affect the financial interests." *Schaeffler v. United States*, 806 F.3d 34, 42 (2d Cir. 2015).  Therefore, the Court finds that the extension of the attorney-client privilege to communications between HHS, DOS, and EOC Nassau is appropriate under the common interest doctrine.

## II.      Information Withheld as Non-Responsive

The Court next turns to the issue of whether the Government properly withheld portions of a document as non-responsive.[13]  The parties generally agree that the Government is under "no obligation to produce information that is not responsive to a FOIA request." *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010), *aff'd*, No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010) (citations omitted).  Nevertheless, Plaintiff argues that

---

[13] The document in question is located at Bates number MIUCCIO_ACF_00035-41.  (Epstein Decl., ¶ 22.)

MIUCCIO_ACF_00035-41 is responsive to FOIA Request 3 and that portions of that document were improperly withheld.  (Pl.'s Cross-Mot. at 6.)

The declaration submitted by Kimberly N. Epstein, FOIA Officer for ACF, makes clear that the portion of MIUCCIO_ACF_00035-41 relating to the Class Action Litigation was deemed responsive to FOIA Request 3 and that portion of the document was released.  (Epstein Decl., ¶ 23.)  Her declaration goes on to state that the remainder of MIUCCIO_ACF_00035-41 was redacted as it was deemed unresponsive to or outside the scope of Plaintiff's FOIA requests.  (*Id*. ¶ 24.)  Despite this declaration from the Government, which the Court notes is "accorded a presumption of good faith" (*Carney*, 19 F.3d at 812), Plaintiff's cross-motion contends that certain portions of MIUCCIO_ACF_00035-41 are still being improperly withheld and are responsive to FOIA Request 3.  However, Plaintiff provides no support for this conjecture and instead advances a highly puzzling and ultimately unavailing argument.  Essentially, Plaintiff argues that the Government changed its position on the responsiveness of MIUCCIO_ACF_00035-41 from its moving papers to its reply brief and that such a change in position raises questions as to the integrity of the Government's position.  (Plaintiffs' Memorandum of Law in Reply and in Further Support of Cross Motion for Summary Judgment ("Pl.'s Reply") at 2.)  The Court observes no change in the Government's position on the responsiveness of MIUCCIO_ACF_00035-41.  The Government has consistently maintained— in both its briefings and supporting affidavit—that a portion of MIUCCIO_ACF_00035-41 was deemed responsive to FOIA Request 3 and released to Plaintiff.  (Epstein Decl., ¶ 23; Gov't Mot. at 17; Reply Memorandum of Law in Further Support of the Government's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Gov't Reply") at 10.)  The Government also has been consistent in its position that the withheld portions of the

document were deemed non-responsive because their subject matter is unrelated to the FOIA Request or falls outside the time period delineated in the FOIA Request. As Plaintiff's bad faith argument fails, there is no reason for this Court to find that the Government improperly redacted non-responsive portions of MIUCCIO_ACF_00035-41. Therefore, the Court grants summary judgment in favor of the Government on this issue.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 13 and 19, enter judgment in favor of Defendants, and close the case.

Dated:   April 27, 2016
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge